UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| GGNSC STANFORD, LLC, et al., | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 5: 16-004-DCR |
| | ) |
| V. | ) |
| | ) |
| LISA GILLIAM, Administratrix of the | ) **MEMORANDUM OPINION** |
| Estate of Geneva Hammonds, | ) **AND ORDER** |
| | ) |
| Defendant. | ) |

\*\*\*\*　\*\*\*\*　\*\*\*\*　\*\*\*\*

Defendant Lisa Gilliam is Geneva Hammonds' daughter and the administratrix of her estate. On December 22, 2015, Gilliam filed suit against GGNSC Stanford, LLC and others in state court, alleging that they were negligent in caring for Hammonds while she resided at a nursing home owned by GGNSC. On January 1, 2016, GGNSC and other state-court defendants filed suit in federal court, seeking to compel arbitration and enjoin the state court action based on an alternative dispute resolution agreement executed during Hammonds' stay at the nursing home. [Record Nos. 1, 4] Conversely, Gilliam has moved to dismiss this action. [Record No. 9] Both motions have been briefed fully and are ripe for consideration. For the foregoing reasons, the Court will compel arbitration and deny Gilliam's motion to dismiss. Additionally, the Court will enjoin Gilliam from pursuing the related state court action.

**I.**

In 2014, Geneva Hammonds was a resident of the Golden LivingCenter in Stanford, Kentucky ("GLC-Stanford"), a nursing home operated by GGNSC Stanford, LLC.[1] Lisa Gilliam was Ms. Hammonds' attorney-in-fact. Pursuant to the relevant Power of Attorney ("POA") document, Gilliam was expressly authorized "[t]o make and sign and all checks, contracts and agreements" on Hammonds' behalf. Further, Gilliam was vested with the authority to "institute or defend suits concerning [Hammonds'] property or rights" and to generally perform for her in her name all that she might do if present.[2] [Record No. 4–1, pp. 1–2]

On July 14, 2014, Gilliam signed GLC-Stanford's Alternative Dispute Resolution Agreement ("ADR Agreement" or "Agreement") on Hammonds' behalf. [Record No. 1–2] The Agreement requires the arbitration of all disputes within its scope and purports to bind "all persons whose claim is or may be derived through or on behalf of [Hammonds]." [*Id.,* p. 1] The Agreement encompasses a variety of matters including violations of rights "under federal, state, or local law or contractual agreement between the Parties . . . negligence; gross negligence; malpractice; and any alleged departure from any applicable federal, state, or local medical, health care, consumer, or safety standards." [*Id.,* p. 3] The Agreement provides that acceptance of its terms is not a condition of admission or continued residence in the facility.

---

[1] The parties have provided conflicting information regarding Hammonds' date of admission to GLC-Stanford. While Gilliam reports that Hammonds was admitted on June 5, 2012, [Record No. 1-1, p. 3], the plaintiffs state that Hammonds was admitted on July 14, 2014, the same day Gilliam executed the ADR Agreement. [Record No. 1, p. 5]

[2] This language is excerpted from the plaintiffs' memorandum in support of their motion to compel arbitration. Gilliam does not contest the accuracy of the language. It appears that the plaintiffs intended to file the POA document as an exhibit to the Complaint, [Record No. 4–1, pp. 1–2], but it is absent from the record. [*See* Record No. 1-3.]

[*Id.,* p. 1]  The Agreement further provides that it shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* [*Id.,* p. 13]

## II.

Gilliam moves to dismiss this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, alleging that the Court lacks subject matter jurisdiction. Whether subject matter jurisdiction exists is a threshold determination the Court must make before proceeding further. *See United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1325 (6th Cir. 1993). It is well-settled that the Federal Arbitration Act ("FAA") does not provide an independent basis for federal jurisdiction. 9 U.S.C. § 4; *see Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009). Rather, petitioners seeking to compel arbitration under the Act must assert an independent source of subject matter jurisdiction. *Vaden*, 556 U.S. at 59; *Ford v. Hamilton Invs. Inc.*, 29 F.3d 255, 257–58 (6th Cir. 1994). Here, the plaintiffs contend that diversity jurisdiction exists under 28 U.S.C. § 1332.

### A. Look-Through Approach

Gilliam concedes that complete diversity exists on the face of the plaintiffs' Complaint. Indeed, the plaintiffs are Delaware limited liability companies with their principle places of business in Texas. Gilliam is a citizen of Kentucky, and the plaintiffs have no members that are citizens of Kentucky. Despite this *prima facie* showing of complete diversity, Gilliam insists that the Court should "look through" to the complaint in the underlying state court action to determine whether complete diversity actually exists. This Court, as well as others, have considered and rejected this argument, which is based on a strained interpretation of the Supreme Court's decision in *Vaden*, 556 U.S. 49. *See e.g., Brookdale Senior Living, Inc. v. Caudill*, No. 5: 14-cv-098, 2014 WL 3420783, at *3 (E.D. Ky. July 10, 2014) (citing *Northport*

*Health Servs. of Arkansas, LLC v. Rutherford*, 605 F.3d 483, 490–91 (8th Cir. 2010)); *Preferred Care, Inc. v. Howell*, No. 16-13-ART, 2016 WL 2858523, at *1 (E.D. Ky. May 13, 2016). The Court remains persuaded that *Vaden*'s look-through approach applies only in cases invoking the court's federal-question jurisdiction. *See id. See also Brookdale Senior Living, Inc. v. Walker*, No. 5:15-cv-206-KKC, 2016 WL 1255722, at *2–3 (E.D. Ky. March 29, 2016); *GGNSC Louisville Hillcreek, LLC v. Watkins*, No. 3:15-cv-902-DJH, 2016 WL 8155295, at *2 (W.D. Ky. Feb. 29, 2016). Accordingly, the court will determine diversity by examining the parties named in the federal complaint, plus any indispensable parties who must be joined under Rule 19 of the Federal Rules of Civil Procedure. *See GGNSC Frankfort, LLC v. Tracy*, No. 14-30-GFVT, 2015 WL 1481149, at *3 (E.D. Ky. March 31, 2015) (quoting *Northport Health Servs. of Arkansas*, 605 F.3d at 490–91).

### B. Failure to Join an Indispensable Party

Gilliam alternatively argues that the Court lacks jurisdiction because the plaintiffs have failed to join an indispensable party who would destroy diversity if joined. *See* Fed. R. Civ. P. 12(b)(7). Specifically, Gilliam contends that the plaintiffs failed to join Kevin McCowan, a nursing home administrator who was named as a defendant in the state court complaint. The first step in determining whether McCowan is indispensable to the resolution of this matter is to determine whether he is necessary, as defined by Rule 19. A party is deemed necessary if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

Gilliam asserts that McCowan is a necessary party because the negligence claims against him in the underlying state cause of action are "intrinsically interwoven" with similar claims against the corporate parties. On the other hand, Gilliam argues, McCowan is not simply a joint tortfeasor, but is independently liable under Kentucky law. If this Court and the state court reached different conclusions concerning the enforceability of the arbitration agreement, McCowan would face inconsistent procedural remedies. Thus, the Court will assume that McCowan is a necessary party. *See Richmond Health Facilities-Kenwood, LP v. Nichols*, No. 5: 14-141-DCR, 2014 WL 4063823, at *5 (E.D. Ky. Aug. 13, 2014).

Because McCowan's joinder would destroy diversity, the Court must determine whether he is an indispensable party under Rule 19(b). *See PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001). This requires the Court to decide whether, in equity and good conscience, the action may proceed in McCowan's absence or should be dismissed. Fed. R. Civ. P. 19(b). *See also Republic of Philippines v. Pimentel*, 553 U.S. 851, 862–63 (2008). The Court considers the following factors in resolving this issue:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:
   (A) protective provisions in the judgment;
   (B) shaping the relief;
   (C) other measures;

(3) whether a judgment rendered in the person's absence would be inadequate; and

>   (4)  whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

Gilliam contends that permitting this matter to proceed in federal court would expose her to the risk of piecemeal litigation. That risk, however, is a result of Gilliam's decision to file suit in state court rather than demanding arbitration under the Agreement. *See Brookdale Senior Living Inc.*, 2014 WL 3420783, at *5 (citing *PaineWebber*, 276 F.3d at 200–06; *GGNSC Vanceburg, LLC v. Hanley*, No. 13-106-HRW, 2014 WL 1333204, at *4 (E.D. Ky. March 28, 2014)). Gilliam's concern that this Court and the state court will reach conflicting interpretations of the arbitration agreement does not constitute the type of prejudice necessary to support a finding that McCowan is an indispensable party. *See PaineWebber, Inc.*, 276 F.3d at 203. Further, there is no indication that any judgment rendered in McCowan's absence will be inadequate. Additionally, the possibility of Gilliam having to arbitrate her claims against the corporate parties while proceeding with her claims against McCowan in state court does not affect the adequacy of any judgment between Gilliam and the corporate parties. *See id.* at 205.

Only the final factor weighs in favor of dismissal. But while the state court presents an alternate forum for the plaintiffs to seek enforcement of the arbitration agreement, the "existence of another forum does not, in and of itself, outweigh a plaintiff's right to the forum of his or her choice." *PaineWebber, Inc.*, 276 F.3d at 205 (citation omitted). Important policy considerations underlying the FAA require that federal courts remain available to enforce arbitration agreements in diversity cases. *See id.* For the foregoing reasons, the Court concludes that McCowan is not an indispensable party to this action.

## III.

A.  *Colorado River* **Abstention**

Gilliam also contends that the Court should abstain from exercising jurisdiction under the doctrine announced in *Colorado River Water Conservation District, et al. v. United States*, 424 U.S. 800, 813 (1976). In *Colorado River*, the Supreme Court noted that federal courts have a "virtually unflagging" obligation to exercise the jurisdiction given to them. *Id.* at 817. Under limited circumstances, however, federal courts will abstain from exercising jurisdiction and will defer to the concurrent jurisdiction of the state court. In determining whether abstention is appropriate, the court will consider factors:

> (1) whether the state court has assumed jurisdiction over any res or property;
> (2) whether the federal forum is less convenient to the parties;
> (3) avoidance of piecemeal litigation;
> (4) the order in which the jurisdiction was obtained;
> (5) whether the source of governing law is state or federal;
> (6) the adequacy of the state court action to protect the federal plaintiff's rights;
> (7) the relative progress of the state and federal proceedings; and
> (8) the presence or absence of concurrent jurisdiction.

*Romine v. Compuserve Corp.*, 160 F.3d 337, 340–41 (6th Cir. 1998) (citations omitted).

Before the *Colorado River* doctrine may be applied, the Court must determine whether the concurrent state and federal actions are actually parallel. *Id.* at 339. While "exact parallelism" is not required, the two proceedings must be "substantially similar." *Id.* at 340 (alterations and internal quotation marks omitted). And while the relevant state and federal actions differ procedurally, the parties (save McCowan) are the same and the actions involve similar issues. Further, if the state proceeding was seen through to its conclusion, there is little doubt that it would dispose of the claim presented in the federal case. *See Preferred Care of*

*Delaware, Inc. v. Vanarsdale*, 152 F.Supp.3d 929, 931 (E.D. Ky. 2016). Accordingly, the two actions are sufficiently parallel to proceed with the *Colorado River* inquiry.

In *Colorado River*, the paramount concern was whether there was a "clear federal policy evinc[ing] . . . the avoidance of piecemeal adjudication" within the statutory scheme at issue. *Answers in Genesis of Kentucky, Inc. v. Creation Ministries, Int'l., Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009) (quoting *Colorado River*, 424 U.S. at 819). The Sixth Circuit has made clear that, with respect to the Federal Arbitration Act, there is not such a policy. *Id.* The purpose of the FAA is to enforce parties' private agreements and this concern predominates, even if piecemeal litigation results. *Id.* (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Accordingly, the most important factor weighs in favor of exercising jurisdiction.

Other factors counsel against abstention or are neutral. There is no indication that the state court has assumed jurisdiction over any property. There is also no indication that the federal forum is less convenient to the parties than the Lincoln County Circuit Court. And while Gilliam filed her action in state court on December 22, 2015, the plaintiffs filed the present action very shortly thereafter on January 6, 2016. The fifth factor, which concerns the source of governing law, also weighs against abstention because the FAA is the basis of interpreting the disputed arbitration agreement. *See PaineWebber*, 276 F.3d at 208–09. While state law also is implicated with respect to the validity of the arbitration agreement, "the presence of federal law issues must always be a major consideration weighing against surrender of federal jurisdiction in deference to state proceedings." *Howell*, 2016 WL 2858523, at *4 (quoting *PaineWebber*, 276 F.3d at 208).

The sixth factor requires the Court to examine the adequacy of the state court to protect the federal plaintiffs' rights. As Gilliam points out, the state court is bound to apply the FAA. The Plaintiffs contend that, should this Court abstain, their rights would not be adequately protected based on Kentucky courts' growing hostility toward pre-dispute arbitration agreements in the nursing home setting. *See* Record No. 11, p. 21–22, *citing Extendicare Homes Inc. v. Whisman*, 478 S.W.3d 306 (Ky. 2015). A sister court in the Western District of Kentucky has voiced a similar concern. *See GGNSC Louisville Hillcreek, LLC*, 2016 WL 815295, at *3; *Brandenburg Health Facilities, LP v.* Mattingly, 3: 15-cv-833-DJH, 2016 WL 3448733, at *3 (W.D. Ky. June 20, 2016). The Court agrees and finds that this factor weighs against abstention.

The seventh factor, which examines the relative progress of state and federal proceedings, also weighs against abstention. Shortly after Gilliam filed the suit in state court, the plaintiffs filed this action. The state court action remains in the early stages and the Court has been advised that no motions or rulings have been filed in that action. Based on the pending motions in the present case, it appears that the parties have invested significant time and resources in federal court. The eighth and final factor—"the presence or absence of concurrent jurisdiction,"—also weighs against abstention. While the presence of concurrent jurisdiction typically weighs in favor of abstention, its presence is insufficient to justify abstention "where a congressional act provides the governing law and expresses a preference for federal litigation." *PaineWebber*, 276 F.3d at 208–09. Because the FAA expresses a preference for vindication by the federal courts, concurrent jurisdiction does not support deference to the state court in this instance. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983).

Based on the foregoing analysis, no exceptional reason exists for this Court to abstain from exercising jurisdiction over this matter. *See id.* at 25–26.

### IV. Motion to Dismiss Under Rule 12(b)(6)

#### A. Validity of the Arbitration Agreement Under *Ping* and *Whisman*

Having resolved the preliminary questions regarding jurisdiction and abstention, the Court turns to the enforceability of the Arbitration Agreement. Gilliam contends that she lacked authority to execute the Agreement on Hammonds' behalf in light of the Kentucky Supreme Court's holdings in *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012), and *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306 (Ky. 2016). The plaintiffs contend that the arbitration agreement is valid under *Ping* and that *Whisman* is preempted by the FAA.

The operative facts of *Ping* are similar to those of the present case. Donna Ping, the daughter and executrix of the estate of her deceased mother, Alma Duncan, brought suit in Kentucky state court against the nursing home where her mother resided prior to her death. Several years before Duncan entered the nursing home, she executed a "General Power of Attorney" in which she appointed Ping as her agent. The POA granted Ping the authority "to do and perform any, all, and every act and thing whatsoever requisite and necessary to be done, to and for all intents and purposes, as [Duncan] might or could do if personally present, including but not limited to the following . . . ." The POA went on to enumerate specific acts related to the management of Duncan's property, finances, and healthcare. *Ping*, 376 S.W.3d at 586–87.

Several years later, Duncan became incapacitated by a stroke and entered the nursing home. *Id.* at 587. Upon Duncan's admission, Ping signed a contract on Duncan's behalf agreeing to arbitrate any future disputes with the nursing home. *Id.* Later, after Ping sued the

nursing home in state court, the Kentucky Supreme Court held that the POA did not grant Ping the authority to enter into an arbitration agreement on Duncan's behalf. *Id.* at 598–94. Although Ping was granted "full and general power and authority to act on [Duncan's] behalf," the court determined that an agent's authority under a POA must be construed in reference to the types of transactions expressly authorized in the document. *Id.* at 592. Accordingly, Ping's authority was limited to matters involving property, finances, and health care. *See id.* at 587, 592. In determining that Ping did not have authority to enter into the arbitration agreement, the court reasoned that the decision to waive one's constitutional right to a jury trial did not relate to the management of property or finances. *Id.* at 593–94. And while an agreement to arbitrate could be considered a healthcare decision if the agreement were a condition of admission into the nursing facility, it was not a condition Duncan's admission. *Id.* at 593.

The authority granted to Gilliam under Hammonds' POA is significantly broader than that at issue in *Ping*. Gilliam was expressly authorized to "make and sign any and all checks, contracts and agreements" on Hammonds' behalf. Further she was authorized to "institute or defend suits concerning [her] property or rights" and to "generally perform for [her] in [her] name all that [she] might do if present." [Record No. 4-1, pp. 1–2] This distinguishes *Ping* from the present case in a variety of important ways. First, Gilliam was expressly authorized to make and sign any and all contracts and agreements on Hammonds' behalf. Given its plain meaning, this clause would include an arbitration agreement. Further, Gilliam was granted the authority to initiate lawsuits, which provides strong evidence of Hammonds' intent to give Gilliam authority with respect to legal matters. Construing Gilliam's broad authority with reference to the types of transactions expressly mentioned in the POA, under *Ping*, Gilliam possessed the authority to enter into the Arbitration Agreement on Hammonds' behalf. *See*

*Pine Tree Villa, LLC v. Brooker*, 612 F. App'x 340, 344–45 (6th Cir. 2015) (distinguishing *Ping* from cases involving broader grants of authority).

In *Whisman*, the Kentucky Supreme Court expanded upon *Ping*, creating more exacting requirements for POA documents which purport to grant an agent authority to enter into an arbitration agreement on behalf of a principal. 478 S.W.3d 306. *Whisman* involved the consolidation of three lawsuits in which nursing homes sought to enforce arbitration agreements signed by their residents' agents. *Id.* at 312. Examining each POA document individually, the court concluded that language conferring "the power to institute or defend suits concerning [the principal's] property rights" was insufficient to confer authority to enter into a pre-dispute arbitration agreement. *Id.* at 322–23. The court reasoned that instituting or defending a suit is dissimilar to making an agreement that future claims will be arbitrated. *Id.* at 323. Additionally, the court explained that "suit" is not tantamount to arbitration. *Id.* The court also determined that language conferring the power "to draw, make and sign any and all checks, contracts, notes, mortgages, agreements, or any other document" was insufficient to confer authority because these matters pertain only to financial affairs. *Id.* at 324–25. Ultimately, the court held that an agent's authority to choose arbitration, thus waiving the right to trial by jury, must be "unambiguously expressed in the text of the power-of-attorney document." *Id.* at 328.

The plaintiffs contend that *Whisman* is contradictory to the Federal Arbitration Act is and thus preempted. *See Circuit* City, 532 U.S. at 111-12. The Court agrees with the United States District Court for the Western District of Kentucky that *Whisman* is preempted by the FAA. *See, e.g., Preferred Care of Delaware, Inc. v. Crocker*, 5: 15-cv-177-TBR, 2016 WL 1181786, *9 (W.D. Ky. March 25, 2016); *GGNSC Louisville Hillcreek, LLC*, 2016 WL

815295, at *3. Congress enacted the FAA "to ensure judicial enforcement of privately made agreements to arbitrate" and "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–20 (1985). While generally applicable state laws may invalidate arbitration agreements, a state law may only affect arbitration agreements in the same way it affects contracts generally. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987).

In determining whether the FAA preempts *Whisman*, the Court applies the test set out in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). *See Richmond Health Facilities v. Nichols*, 811 F.3d 192, 197–201 (6th Cir. 2016). Because *Whisman* does not prohibit the arbitration of a particular type of claim outright, it does not offend the first prong of *Concepcion*. 563 U.S. at 341. The Court will proceed directly to the second, more complex analysis which focuses on whether a law normally thought to be generally applicable has been applied in a way that disfavors arbitration or has a disproportionate impact on arbitration agreements. *See id.*; *Nichols*, 811 F.3d at 198–99.

The rule announced in *Whisman* fails the second inquiry under *Concepcion* because it stands as an obstacle to the accomplishment to the FAA's objectives. *See Concepcion*, 563 U.S. at 341; *see also Dean Witter Reynolds, Inc*. 470 U.S. at 219–20. Courts may not invalidate arbitration agreements based on state laws tailored to arbitration agreements, nor may state courts single out arbitration agreements for suspect status. *Doctor's Assocs., Inc.*, 517 U.S. at 687. Rather, arbitration agreements must be placed "upon the same footing as other contracts." *Id.* Without question, the Kentucky Supreme Court has singled out arbitration agreements by requiring that a POA expressly include an agent's authority to enter into a pre-dispute

arbitration agreement, as opposed to other types of contracts. Additionally, Kentucky courts have disfavored arbitration agreements by reading in an exclusion from extremely broad grants of authority. The requirement that a principal explicitly convey to an attorney-in-fact the authority to enter into a pre-dispute arbitration agreement "places arbitration agreements in a class apart from 'any contract,' and singularly limits their validity." *Id.* at 688. Accordingly, the rule announced in *Whisman* is preempted by the FAA.

### B. Interstate Commerce

Gilliam argues, alternatively, that this action should be dismissed because the arbitration agreement does not evidence a transaction involving interstate commerce. The FAA extends to transactions "in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity would represent a general practice . . . subject to federal control." *Ping*, 376 S.W.3d at 589 (quoting *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57 (2003)). Such an arbitration agreement is viewed as a component the larger residency contract, which typically involves interstate commerce under the FAA. *See e.g., Brookdale Senior Living, Inc. v. Hibbard*, No. 5:13-289-KKC, 2014 WL 2548117, at *10 (E.D. Ky. June 4, 2014). Interstate commerce is defined broadly and healthcare is an economic activity that represents a general practice subject to federal control. *See Ping*, 376 S.W.3d at 589. Accordingly, Gilliam's claim that the arbitration agreement is unenforceable because it does not evidence a transaction involving interstate commerce is without merit.

### C. Unconscionability

Gilliam also attacks the arbitration agreement on the grounds of unconscionability. She contends that the ADR Agreement is part of a "mass-produced, boiler-plate, pre-printed

-14-

document, likely presented to the Defendant within a lengthy stack of admissions paperwork." [Record No. 9–1, p. 26] However, the Agreement is marked with large, bold type which reads "Alternative Dispute Resolution Agreement." [Record No. 1–2, p. 1] Halfway down the first page of the agreement in bold, capital letters, a disclaimer appears, indicating that by signing the agreement, the parties waive their constitutional right to have disputes decided in court. *Id.* Further, on the signature page, in bold, capital letters, the parties are cautioned that the agreement "governs important legal rights" and to "read it carefully and in its entirety before signing." *Id.* at p. 7. Simply because the Agreement may have been part of a lengthy admissions packet does not render it procedurally unconscionable. *See Energy Home, Div. of So. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 836 (Ky. 2013). Further, the Agreement will not be invalidated because of uneven bargaining power, without more, or because it is the product of an "old-fashioned bad bargain." *See id.* (citing *Schnuerle v. Insight Comms. Co., L.P.*, 376 S.W.3d 561, 575 (Ky. 2012)). *See also Conseco Fin. Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001).

Additionally, Gilliam has failed to demonstrate that the use of JAMS rules and procedures is substantively unconscionable. JAMS' discovery limitations apply to both parties and can be modified by the arbitrator if there is reason to do so. *See Golden Gate Nat'l Senior Care, LLC v. Sulpizio*, No. 1: 15-cv-174, 2016 WL 1271333, at *4 (M.D. Pa. March 31, 2016). *See also Jean v. The Stanley Works*, No. 1: 04-cv-1904, 2008 WL 2778849, at *2 (N.D. Ohio July 14, 2008). Gilliam argues that because the defendant will be responsible for paying the bulk of arbitration fees, JAMS is unlikely to be neutral. [Record No. 9–1, p. 27] This allegation is speculative, at best. Should the Agreement have allocated the differently, the plaintiff may have been unduly burdened by them.

## V. Anti-Injunction Act

Although the FAA requires a federal court to stay its own proceedings when arbitration is required, it does not specifically authorize federal courts to stay pending state court proceedings. *Great Earth Co., Inc. v. Simons*, 288 F.3d 878, 893 (6th Cir. 2002). Rather, the federal court's authority to enjoin state court proceedings is derived from the Anti-Injunction Act, 28 U.S.C. § 2283. The Sixth Circuit has determined that a district court's injunction of state-court proceedings after compelling arbitration falls within the exception of the Anti-Injunction Act necessary to protect or effectuate the district court's judgments. *Great Earth*, 288 F.3d at 894. Because the Court has determined that the parties entered into a binding arbitration agreement, it is necessary to enjoin Gilliam from pursuing her claims in state court.

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. The defendant's Motion to Dismiss [Record No. 9] is **DENIED.**

2. The plaintiffs' Motion to Compel Arbitration and Enjoin State Court Action [Record No. 4] is **GRANTED**.

3. Lisa Gilliam is **COMPELLED** to submit her claims to arbitration according to the terms of her agreement and **ENJOINED** from proceeding with her action in state court.

4. The Court **STAYS** this proceeding until the conclusion of the ordered arbitration. The parties are directed to file Joint Status Reports regarding the arbitration proceeding each thirty days until the matter is completed.

This 7th day of September, 2016.



Signed By:
*Danny C. Reeves* DCR
United States District Judge